# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ERNEST CHENEVERT                                         CIVIL ACTION

VERSUS                                                   NO. 12-966

N. BURL CAIN, WARDEN                                     SECTION "F"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. In addition, two motions filed by petitioner seeking a stay of these proceedings are pending before me.[1] Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[2] For the following reasons, I recommend that the motions to stay be **DENIED** and that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1] Rec. Doc. Nos. 11, 12 (docket entries showing automatic referral by the Clerk of Court). The second pleading is not a separate motion but an attempt by Chenevert to present exhibits in support of his first motion to stay.

[2] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.   FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Ernest Chenevert, a convicted inmate, was indicted in Terrebonne

Parish on May 22, 2001, for the aggravated rape of a female juvenile, the victim K.B.,

in Case No. 369138.[3]   On May 25, 2001, Chenevert was also charged by bill of

information in Case No. 369081 with one count of sexual battery and one count of

molestation of a juvenile, with K.B. indicated as the victim in both counts.[4]   The

Louisiana First Circuit Court of Appeal summarized the facts of the cases as follows:

> The victim, K.B., testified at trial.  At the time of her testimony, she was
> twelve years old and had been living with her grandmother for a few months.
> Prior to living with her grandmother, the victim had lived with her mother.  When
> the victim was nine years old, defendant lived with the victim's mother, the
> victim, and her sister and two brothers. The victim knew defendant as "June."
>       The victim testified concerning the first time defendant touched her in her
> private area.  She described the "private area" as the part of a body for "using the
> bathroom."   She knew what a vagina was, indicating it was the private part and
> private area of a woman's body.  She was nine years old at the time the alleged
> acts occurred.  She was in her mother's room and "about to catch a whipping."
> Defendant locked the door and gave the victim two choices.  Defendant told the
> victim she could either catch a whipping or "be nice" to him.  Defendant put the
> victim on her mother's bed, put a pillow over the victim's head, and removed her
> pants and underwear. He then touched the outside of the victim's private area with
> his finger. Defendant then put his private part around the victim's private part.
> He then put his private part into the victim's private part, but "not all the way."
> Thereafter, the victim went to the bathroom to clean "wet stuff" off of her private
> part.  She had not urinated.  Defendant told the victim if she disclosed his conduct
> toward her, he "was going to make [the victim's] life a living hell."  Defendant
> repeated his actions toward the victim on other occasions without giving the
> victim choices. On some of those occasions, defendant put his finger inside the
> victim's private area. On other occasions, he touched the victim's private area

---

[3]St. Rec. Vol. 1 of 9, Indictment, Case No. 369138, 5/22/01.

[4]St. Rec. Vol. 6 of 9, Bill of Information, Case No. 369081, 5/25/01.

with his private area. The victim always had to clean up after the defendant touched her private area with his private area.

On cross-examination, the victim conceded that she did not like defendant and that she did not like the fact that her mother lived with defendant.

At trial the State presented testimony from Dr. Coleridge T. Franklin. Dr. Franklin first evaluated the victim for possible sexual activity on October 21, 1997, when she was seven years old. Dr. Franklin testified that the victim's parent advised him that the victim had been sexually molested approximately three years earlier. An examination of her vaginal area revealed no evidence of previous penetration. The victim's hymen had been perforated, which according to Dr. Franklin, was not usual for a seven-year old child, but there was no evidence of any tears.

Dr. Franklin next examined the victim in March of 2000, in regard to complaints of vaginal burning during urination. The victim's vaginal exam showed no real change from the earlier examination, with the exception of slight redness around the urethra and a small amount of vaginal discharge. The redness most likely resulted from infection, poor hygiene, or chemical irritation from detergent. If the redness was due to infection, said infection could possibly have resulted from molestation.

Dr. Franklin next examined the victim on April 18, 2001. The victim's vaginal exam did not show any evidence of recent (within seventy-two hours) tears or redness. However, there was a change in the contour and shape of the victim's hymen. There was evidence indicating possible previous trauma, specifically, the hymen had been disrupted in four distinct areas. In a non-sexually active female, the edges of the hymen would have been relatively intact. While patterns of disruption indicated some type of vaginal trauma, Dr. Franklin was unable to state the nature of the trauma. The changes in the victim's hymen were consistent with either a finger or a penis being inserted into her.

The State also presented testimony at trial from Katrina North. North is the victim's cousin. During the Christmas of 2000, the victim came to live with North and her grandmother. The victim told North that when North and the victim lived together in "the Circle," the victim's stepfather (defendant) would come into her room during the night and rub her legs and "all that stuff." North was also told by the victim that her stepfather would punish her in "the room" and rape her.

The defense presented testimony at trial from the victim's mother. The victim had lied in the past, but the victim's mother indicated she did not think the victim would lie about molestation. On cross-examination, the victim's mother indicated she became involved with the defendant when the victim was four years old and stayed with defendant for six years. She indicated she lived with defendant in Senator Circle. Defendant once told the victim's mother, "the best kind of pussy to have is virgin pussy."

The defense also called Houma Police Department Detective Milton Wolfe, Jr. to the stand. During his investigation of the victim's accusations against the defendant, the victim's mother advised Detective Wolfe that the victim had made sexual abuse allegations in the past against people other than the defendant. Medical examinations of the victim following those allegations, however, revealed no trauma.

Defendant also testified at trial. He denied molesting the victim. Defendant specifically denied putting his hands on the victim's private area or vaginal area. He specifically denied putting his penis on the victim's vaginal area. He specifically denied ejaculating on the victim. Defendant denied threatening to make the victim's life a living hell. He also denied telling the victim's mother that "the best pussy was virgin pussy."

(footnotes omitted) State v. Chenevert, 876 So.2d 970 (2003-2282) (La. App. 1st Cir. 2004); State v. Chenevert, 876 So.2d 970 (La. App. 1st Cir. 2004) (2003-2281) (Table); State Record Volume 1 of 9, Louisiana First Circuit Court of Appeal Opinion, 2003-KA-2282, June 25, 2004; State Record Volume 2 of 9, Louisiana First Circuit Court of Appeal Opinion, 2003-KA-2281, June 25, 2004.

Chenevert was tried before a jury on August 19, 20 and 21, 2002, and was found guilty as charged on August 22, 2002, on all three counts.[5] At a hearing held on November 20, 2002, the state trial court denied Chenevert's motion for a new trial, supplemental motion for a new trial and motion for post-verdict judgment of acquittal.[6] After waiver of legal delays, the court sentenced Chenevert that day to serve life in prison

---

[5]St. Rec. Vol. 3 of 9, Trial Minutes, 8/19/02; Trial Minutes, 8/20/02; Trial Minutes, 8/21/02; 8/22/02; St. Rec. Vol. 1 of 9, Verdict Form (369138), 8/22/02; St. Rec. Vol. 6 of 9, Verdict Forms (2 pages, 369081), 8/22/02;St. Rec. Vol. 4 of 9, Trial Transcript, 8/19, 20, 21/02.

[6]St. Rec. Vol. 3 of 9, Sentencing Minutes, 11/20/02; St. Rec. Vol. 1 of 9, Motion for New Trial, 8/23/02; Supplemental Motion for New Trial, 9/18/02; Motion for Post-Verdict Judgment of Acquittal, 8/23/02; St. Rec. Vol. 5 of 9, Sentencing Transcript, 11/20/02.

without parole for the rape conviction in Case No. 369138. The court also sentenced Chenevert to serve five years in prison on each count in Case No. 369081, with the sentence for sexual battery to be served without benefit of parole, probation, or suspension of sentence. Each sentence was ordered to run concurrently. The court later denied Chenevert's motion to reconsider the sentences.[7]

Chenevert's appointed counsel lodged separate appeals for each case. In each direct appeal, counsel challenged the sufficiency of the evidence to support the verdict.[8] On June 25, 2004, under separate orders, the Louisiana First Circuit affirmed each of the convictions, finding no merit in the claims raised.[9] In its errors patent reviews, however, the court found errors in the imposition of each of the sentences related to the imposition at hard labor and/or benefits designations and remanded both matters for resentencing. The record indicates that the trial court resentenced Chenevert in November 2004.[10]

---

[7]St. Rec. Vol. 1 of 9, Motion to Reconsider Sentence, 11/21/02; Trial Court Order, 11/21/02.

[8]St. Rec. Vol. 1 of 9, Appeal Brief, 2003-KA-2281 (369081), 11/7/03; Appeal Brief, 2003-KA-2282 (369138), 11/7/03.

[9]State v. Chenevert, 876 So.2d at 970 (2003-KA-2282, 369138); State v. Chenevert, 876 So.2d at 970 (2003-KA-2281, 369081); St. Rec. Vol. 1 of 9, 1st Cir. Opinion, 2003-KA-2282 (369138), 6/25/04; St. Rec. Vol. 2 of 9, 1st Cir. Opinion, 2003-KA-2281 (369081), 6/25/04.

[10]St. Rec. Vol. 3 of 9, Resentencing Minutes, 11/17/04; St. Rec. Vol. 1 of 9, Motion to Reconsider New Trial, 11/19/04; Letter from Clerk of Court, 11/22/04. The record does not contain a minute entry of the resentencing in Case No. 369081 or a transcript of the resentencing in either case.

On January 7, 2005, the Louisiana Supreme Court denied without stated reasons the related writ application filed by Chenevert in connection with both appeals.[11] His conviction became final 90 days later, on August 18, 2005, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On September 20, 2006, Chenevert sent a letter to the state trial court inquiring about the status of an application for post-conviction relief he claimed to have submitted to the court in connection with both cases on August 1, 2006.[12] On October 6, 2006, Chenevert submitted a second copy of the application for post-conviction relief, in which he asserted the following eight (8) grounds for relief related to both cases:[13] (1) Prosecutorial misconduct occurred when the prosecutor (a) used perjured testimony during grand jury proceedings, (b) consolidated cases triable by six and twelve person juries, (c) mentioned during opening statements that defense counsel was appointed, and

---

[11]State v. Chenevert, 891 So.2d 670 (La. 2005); St. Rec. Vol. 2 of 9, La. S. Ct. Order, 2004-KO-2087 (both), 1/7/05; La. S. Ct. Order, 2004-KO-2087 (both), 5/20/05; St. Rec. Vol. 6 of 9, La. S. Ct. Letter, 2004-KO-2087, 8/12/04 (showing postmark of 7/20/04).

[12]St. Rec. Vol. 2 of 9, Letter to Trial Court, 9/22/06 (dated 9/20/06); Inmate's Request for Legal/Indigent Mail, 8/1/06.

[13]St. Rec. Vol. 2 of 9, Application for Post-Conviction Relief, 10/11/06 (dated 10/6/06); Letter to the Court, 2/1/07 (dated 10/31/06).

(d) illegally sought sympathy from the jury during opening statements. (2) He was denied a fair trial before unbiased jurors because two jurors, Travis J. Links and Earl J. Stevenson, lied during voir dire about not knowing the defendant. (3) The trial court lacked jurisdiction over the case because Chenevert was not arraigned on the bill of information in Case No. 369138. (4) He received ineffective assistance of counsel <u>on appeal</u> when counsel failed to challenge the trial court's (a) denial of the defense motion for mistrial when a defense witness volunteered prejudicial testimony, (b) denial of the defense request to sever the counts, and (c) denial of the defense motion to quash. (5) He received ineffective assistance of <u>trial</u> counsel because counsel failed to impeach OCS Investigator Robert Brisco and discover possibly perjured testimony, failed to impeach the victim and discover possibly perjured testimony, failed to use the victim's self-sexual activity to show a source for the abnormal hymen, stipulated to Dr. Franklin as an expert, failed to hire an independent expert, had a conflict of interest, failed to object to the prosecutor's reference to counsel's appointment, failed to object to the prosecutor's attempt to garner sympathy for the victim, failed to challenge the qualifications of juror Travis Links during voir dire, failed to challenge the qualifications of Earl Stevenson remaining on the jury and/or failed to ask for a mistrial. (6) He was denied the right to judicial review of a complete record on appeal. (7) The cumulative errors warrant reversal of the convictions.

On October 13, 2006, the state trial court denied the application as untimely filed under La. Crim. P. art. 930.8.[14] Chenevert sought review of that order in the Louisiana First Circuit.[15]

On January 24, 2007, the appellate court denied the writ application, in part finding the claims arising from the rape conviction in Case No. 369138 to have been untimely filed under La. Code Crim. P. art. 930.8. The court determined that Chenevert's post-appeal writ application to the Louisiana Supreme Court did not seek review of the appeal from this conviction, which allowed the rape conviction to become final more than two years before filing of the application for post-conviction relief. The court also granted the writ application in part, finding that the claims arising from the convictions in Case No. 369081, the appeal from which had been reviewed by the Louisiana Supreme Court, were timely filed. The court remanded the matter to the trial court for review of the claims in connection with the sexual battery and molestation convictions.

On April 12, 2007, Chenevert submitted a motion to the state trial court seeking reconsideration of his claims as to both cases, arguing that his Louisiana Supreme Court writ application in fact had addressed both cases and both appeals.[16] The state trial court

---

[14]St. Rec. Vol. 2 of 9, Trial Court Order, 10/13/06.

[15]St. Rec. Vol. 2 of 9, 1st Cir. Order, 2006-KW-2374, 1/24/07. The record does not contain a copy of the writ application.

[16]St. Rec. Vol. 2 of 9, Motion for Reconsideration, 4/16/07 (dated 4/12/07).

denied the motion, referring Chenevert to the Louisiana First Circuit's January 24, 2007, order.[17]  The court also denied Chenevert's second motion to reconsider submitted to the court on May 1, 2007.[18]

Thereafter, on June 15, 2007, the Louisiana First Circuit granted Chenevert's related writ application, noting that the Louisiana Supreme Court had issued a corrected order identifying both appeal numbers and both convictions, as having been addressed in its January 7, 2005, post-appeal order.  The appellate court determined that Chenevert's application for post-conviction relief was timely filed under La. Code Crim. P. art. 930.8 as to both convictions.  The court remanded the matter for the trial court to consider the application for post-conviction relief with regard to both cases.

The state trial court held several hearings during which Chenevert was represented by counsel.  The court received argument and testimony on the ineffective assistance of counsel claims and the denial of judicial review claim and narrowed the issues being pursued by Chenevert.[19]  Chenevert's appointed counsel filed a motion to withdraw several of the claims Chenevert had filed prose after the testimony at the hearings did not

---

[17]St. Rec. Vol. 2 of 9, Trial Court Order, 4/18/07.

[18]St. Rec. Vol. 2 of 9, Motion to Reconsider, 5/25/07 (dated 5/1/07); Trial Court Order, 5/27/07.

[19]St. Rec. Vol. 3 of 9, Minute Entry, 3/19/08; Hearing Minutes, 8/28/08; Hearing Minutes, 9/30/09; Minute Entry, 1/22/10; Hearing Minutes, 5/12/10; St. Rec. Vol. 5 of 9, Hearing Transcript, 3/19/08; Hearing Transcript, 9/30/09; Hearing Transcript, 5/12/10.

support the claims.[20]  Counsel also later conceded that all of Chenevert's prosecutorial misconduct and trial error claims, except the ineffective assistance of counsel and denial of judicial review claims, were not based on new evidence and were being pursued "only as it dovetails into ineffective assistance of [trial] counsel."[21]

After receipt of court-ordered post-trial memoranda,[22] the state trial court denied the application in its entirety as meritless.[23]  As its reasons for judgment, the court adopted the State's original response and post-hearing memorandum.  In each of these pleadings, the State argued that each of the claims was not supported by the record and was meritless.[24]

The Louisiana First Circuit denied Chenevert's related writ application without stated reasons on April 13, 2011.[25]  Chenevert also submitted a writ application to the Louisiana Supreme Court in which he raised his claims of ineffective assistance of trial

---

[20]St. Rec. Vol. 3 of 9, Amended Motion for Supplemental Post-Conviction Relief, 1/22/10; Trial Court Order, 2/12/10.

[21]St. Rec. Vol. 5 of 9, Hearing Transcript, pp.7, 6-8, 5/12/10; see also, St. Rec. Vol. 3 of 9, Petitioner's Post-Hearing Memorandum, p. 2, 8/31/10.

[22]St. Rec. Vol. 3 of 9, Hearing Minutes, 5/12/10; State's Post-Hearing Memorandum, 8/31/10; Petitioner's Post-Hearing Memorandum, 8/31/10.

[23]St. Rec. Vol. 3 of 9, Trial Court Judgment, 9/21/10.

[24]St. Rec. Vol. 3 of 9, State's Post-Hearing Memorandum, 8/31/10; St. Rec. Suppl. Vol. 1 of 1, State's Response to Post-Conviction Relief Application, 5/2/07.

[25]St. Rec. Vol. 9 of 9, 1st Cir. Order, 2010-KW-2312, 4/13/11.

counsel and denial of judicial review of a complete record.[26]  The court denied the

application without stated reasons on March 23, 2012.[27]

## II. FEDERAL HABEAS PETITION

On May 4, 2012, the clerk of this court filed Chenevert's petition for federal

habeas corpus relief in which he asserts two grounds grounds for relief:[28] (1) He received

ineffective assistance of trial counsel when counsel failed to (a) impeach the victim using

her prior unfounded accusations of sexual abuse by others, (b) object to the qualifications

of the State's expert or hire an independent expert, (c) object to the juror Earl Stevenson

remaining on the jury, (d) impeach OCS Investigator Robert Brisco, (e) object to the

prosecutor's reference to counsel's appointment, and (f) object to the prosecutor's

attempt to garner sympathy for the victim. (2) He was denied the right to judicial review

of a complete record on appeal.

The State filed an answer in opposition to Chenevert's petition arguing that his

petition was not timely filed and should be dismissed for that reason.[29]  Chenevert

responded to the State's answer, arguing that the State failed to apply the mailbox rule

---

[26]St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 11-KH-917, 5/4/11 (postmarked 5/3/11).

[27]State ex rel. Chenevert v. State, 84 So.3d 567 (La. 2012); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2011-KH-0917, 3/23/12.

[28]Rec. Doc. No. 1, p.10.

[29]Rec. Doc. No. 13.

to his state application for post-conviction relief.[30]  He argues that, doing so, tolls the federal filing period and renders his federal petition timely.

III.    MOTIONS TO STAY

Chenevert has filed two motions seeking a stay in this federal habeas corpus proceeding.[31]  Chenevert argues that during the state post-conviction hearing held on May 12, 2010, his appointed counsel attempted to assert and pursue additional post-conviction claims which were not included in his pro se application for post-conviction relief.[32]  Counsel's efforts to do so were denied by the state trial court for lack of timeliness and notice to the State.  Relief on the post-conviction application was denied in the state trial court, the state appellate court and eventually the Louisiana Supreme Court.  Thereafter, neither Chenevert nor his appointed post-conviction counsel made any further effort to raise the new claims in the state courts.  Instead, after relief was denied by the Louisiana Supreme Court, Chenevert filed the instant federal petition asserting only the two post-conviction grounds for relief which have been exhausted through the state courts.

In his motion to stay, Chenevert seeks leave to return to the state trial court to raise these new post-conviction claims, which he identifies as follows: (1) He was denied the

---

[30]Rec. Doc. No. 14.

[31]Rec. Doc. Nos. 11, 12.

[32]See e.g., Rec. Doc. No. 12-1, p. 1-4.

right to a fair trial when he wore a prison uniform and shackles during voir dire. (2) He was denied the right to face his accusers because the person who interviewed the victim was not at trial. (3) The indictment and bill of information contain the same charges in violation of double jeopardy. (4) He received ineffective assistance of counsel when counsel (a) put a hostile witness on the stand who gave prejudicial testimony, (b) failed to object to the petitioner being in prison uniform for voir dire, (c) failed to investigate the testimony to be given by the inspector from the Office of Child Services, and (d) failed to object to the indictment and bill of information violating double jeopardy. Chenevert seeks leave to return to the state courts to exhaust these claims before proceeding with this federal petition.

Chenevert's stay request invokes 28 U.S.C. § 2251. However, Chenevert appears to rely upon the wrong statute. Section 2251 allows a federal judge "before whom a habeas corpus proceeding is pending" the power to stay a state court proceeding "for any matter involved in the habeas corpus proceeding." 28 U.S.C. § 2251(a)(1); McFarland v. Scott, 512 U.S. 849, 857 (1994). The statute mandates that, upon granting the stay, any further state court proceeding is void. 28 U.S.C. § 2251(b). Chenevert, however, is not seeking this type of relief. His post-conviction proceedings in the state courts, through the Louisiana Supreme Court, have been resolved. He has cited no other pending state court proceeding for this court to stay.

Chenevert, instead, seeks leave to return to the state courts to present his new and unexhausted claims and, broadly construing his request, a stay of this federal proceeding to allow him to do so.

In <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004), the Supreme Court addressed the availability of a stay-and-abeyance in connection with "mixed petitions" containing both exhausted and unexhausted claims. <u>Id.</u> The <u>Pliler</u> court ultimately reiterated the long-standing directive that a mixed petition be dismissed without prejudice to require exhaustion. <u>Id.</u> at 233. The Supreme Court recognized that a petitioner had two choices when faced with dismissal of a mixed petition: (1) return to the state courts to exhaust his claims in full; or (2) amend or resubmit his petition to raise only exhausted claims in the federal district court. <u>Id</u>.

The Supreme Court later held that stay-and-abeyance was an extraordinary remedy <u>not</u> to be made readily available to a habeas petitioner. <u>Rhines v. Weber</u>, 544 U.S. 269, 278 (2005). The <u>Rhines</u> Court cautioned that a stay-and-abeyance "should be available only in <u>limited</u> circumstances," and is appropriate <u>only</u> when the district court determines that there was "good cause" for the failure to exhaust. <u>Id</u>. at 277 (emphasis added). Stays are improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." <u>Id</u>.

In this case, Chenevert has not presented this court with a mixed petition. The two claims asserted in his original habeas petition have been exhausted, as the State concedes

in its answer. Chenevert readily admits that his new claims have not been properly raised in any of the state courts. Instead, in his motions to stay, he indicates his plan to present the claims to the state courts in a post-conviction application and eventually return to this court when he completes exhaustion. This alone distinguishes his current petition from the type of mixed petition addressed in <u>Pliler</u>/<u>Rhines</u>.

Furthermore, Chenevert has not presented any good cause for his failure to exhaust those claims before proceeding in this court. Chenevert indicates that he was made aware of these new claims at or before the state court post-conviction hearing, which was held on May 12, 2010, almost two years <u>before</u> he filed this federal petition and almost four years <u>after</u> he filed his state court application for post-conviction relief. During the two years that have lapsed since that hearing, Chenevert made no effort to pursue those claims in the state courts. The record indicates that he was capable of doing so, since he filed the original state court application for post-conviction relief without counsel and is proceeding here pro se.

I also find that the claims are trial related and were available to be raised by him, if he had exercised diligence, before or at the time he filed his first state application for post-conviction relief. Chenevert has not presented anything to this court that would suggest good cause for his failure to assert the claims in a timely manner.

Chenevert's new and unrelated claims themselves would be untimely before this court should he attempt to amend his petition to include them. <u>Mayle v. Felix</u>, 545 U.S.

644, 654 (2005) (an amended habeas petition, raising discrete claims unrelated to those raised in the original petition, and which is filed after expiration of the federal limitations period, does not relate back to the filing date of the original petition under Fed. R. Civ. P. 15(c)).

In sum, a stay is not to be used in lieu of a petitioner's diligent exhaustion of state court remedies. A stay to allow for completion of exhaustion must be limited to instances in which good cause is shown for the failure to fully exhaust. Rhines, 544 U.S. at 278. Chenevert has failed to show any good cause for his failure to exhaust before filing in this court or any sound basis to issue a stay in this case. His motions to stay should be denied.

## IV.  GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") went into effect on April 24, 1996[33] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Chenevert's petition, which, for reasons discussed below, is deemed filed in this federal court on April 11, 2012.[34]

---

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Chenevert's federal petition was not timely filed. Chenevert opposes the defense because the State failed to apply the mailbox rule to his state application for post-conviction relief, and doing so makes his federal filing timely. Chenevert's argument is correct.

The AEDPA timeliness evaluation requires application of the prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006). Chenevert presented to the state courts and this federal court a copy of his August 1, 2006 indigent mail request for his application for state court post-conviction relief.[35] Although the pleading is not part of the record, Chenevert has consistently asserted that the pleading was mailed on August 1, 2006, to the state court. Under the mailbox rule, the fact that the pleading was not actually filed by the state trial court does not change the fact that

---

delivery to the court is considered the time of filing for statute of limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Chenevert's petition was filed by the clerk of this court on May 4, 2012, when pauper status was granted. Chenevert's signature on the petition was dated April 11, 2012. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing.

[35]Rec. Doc. No. 14-1, p.1; St. Rec. Vol. 2 of 9, Inmate's Request for Legal/Indigent Mail, 8/1/06.

by law it was deemed "filed" when it was delivered to prison officials for mailing, "regardless of whether the pleading actually reaches the court." Stoot v. Cain, 570 F.3d 669, 672 (5th Cir. 2009). By that time, 347 days of the one-year federal filing period had elapsed. Considering August 1, 2006, as the filing date for Chenevert's state application for post-conviction relief, the federal filing period was tolled on that date and remained tolled during the state post-conviction proceedings, which ended March 23, 2012.

Under these circumstances, I find that his federal petition was timely submitted for filing to this court on April 11, 2012, which was the 365th day of the one-year statute of limitations period allowed under federal law. The State's limitations defense does not bar this petition.

V.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000); <u>Penry</u>, 532 U.S. at 792-93; <u>Hill</u>, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>,

535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    INEFFECTIVE ASSISTANCE OF COUNSEL

Chenevert alleges that his trial counsel provided ineffective assistance because he failed to (A) impeach the victim using her prior unfounded accusations of sexual abuse by others; (B) object to the qualifications of the State's expert or hire an independent expert; (C) object to the juror Earl Stevenson remaining on the jury; (D) impeach OCS Investigator Robert Brisco; (E) object to the prosecutor's reference to counsel's appointment; and (F) object to the prosecutor's attempt to garner sympathy for the victim.

The state trial court denied relief on these claims as meritless. Chenevert's subsequent writ applications to the Louisiana First Circuit and the Louisiana Supreme Court were denied without reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d

553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the

proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications

is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." <u>Bell v. Cone</u>, 535 U.S. at 697 (citing <u>Strickland</u>, 466 U.S. at 689). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. <u>Strickland</u>, 466 U.S. at 689; <u>Moore v. Johnson</u>, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. <u>Id</u>.

A.   Failure to Impeach the Victim K.B.

Chenevert alleges that counsel erred in failing to cross-examine the victim K.B. about her prior accusations of sexual abuse against other people. Chenevert argues that counsel admitted at the post-conviction hearing that he was aware of K.B.'s two prior accusations, but he experienced difficulty in attempting to investigate the claims. Chenevert further argues that counsel did not offer a strategic reason for his failure to confront K.B. about these other accusations. He claims that, as a result, counsel failed adequately to challenge her credibility. He contends that this was deficient performance that prejudiced his defense.

As Chenevert recognizes, the questioning of witnesses falls within the ambit of trial strategy. "[A]n attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, 'are virtually unchallengeable.'" Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir.1994) (quoting Strickland, 466 U.S. at 691). "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" Williams v. Cockrell, 31 Fed. Appx. 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).

In this case, the evidence or testimony Chenevert wanted counsel to elicit concerned the victim's prior alleged unfounded accusations of sexual abuse made against

24

others. A reading of the post-conviction hearing transcript indicates that counsel, William Yates, indicated that he and his co-counsel investigated Chenevert's suggestion that K.B. had made prior accusations and they were never able to establish the veracity of his claim.[36] While he had no independent recollection of the specific accusations, Yates testified that the record confirmed their unsuccessful efforts to locate the nine-year old who allegedly fondled K.B., which was witnessed by her brother.[37] He did recall that co-counsel contacted K.B.'s brother, who denied everything.[38] Yates also had no recollection of the allegations of sexual abuse at age five being in the victim's records.[39] Yates later indicated that Chenevert wanted to call the person "Doc" accused in that incident, and counsel was unable to locate him.[40] Yates testified that although he did not have independent recollection of the contents of the records, he would not challenge the contents of the records if the records contained them.[41]

Chenevert contends that Yates's explanation was not sufficient to establish a strategic reason for his failure to question K.B. about the prior incidents. However, the

---

[36]St. Rec. Vol. 5 of 9, Hearing Transcript, p. 80, 5/12/10.

[37]Id., at pp. 80-81.

[38]Id., at p. 81.

[39]Id.

[40]Id., p. 103.

[41]Id., pp. 81-82.

record indicates that counsel made clear that he and co-counsel considered the allegations unsupported or unsupportable at trial. This indicates a reasonable basis for not pursuing a line of questioning related to those allegations.

The record also reflects that counsel called K.B.'s mother at trial, at Chenevert's urging, to illicit her testimony that K.B. had a tendency to lie.[42] Counsel also asked the mother about the prior molestation incidents, and she did not recall a prior molestation claim or having K.B. examined for molestation.[43] Counsel also thoroughly questioned K.B. on her propensity to lie to Chenevert and her mother.[44] He also asked her about prior punishment and lectures she received about "misbehaving with boys."[45]

Counsel's actions at trial establish an effort to challenge K.B.'s credibility by showing her occasional lying to adults and her dislike for Chenevert, all in an effort to raise doubt about the reliability of her accusations, without having to present the other questionable accusation history, which her own mother did not recall. "The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp.2d 831, 859 (W.D. Tex. 2004). The record supports the state courts'

---

[42]St. Rec. Vol. 4 of 9, Trial Transcript, p. 121, 8/19, 20, 21/02.

[43]Id., pp. 123-24.

[44]Id., pp. 95-96.

[45]Id., pp. 101-02.

conclusion that counsel's actions fell within the scope of sound trial strategy and was not deficient performance.

Chenevert has not demonstrated any prejudice from counsel's decision not to question the victim about the prior accusations based on his assessment of the record and inability to confirm the events independently. The fact that the defense strategy was not successful does not mean that counsel was deficient. See Martinez v. Dretke, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

Chenevert has provided no basis to undermine the deference due his counsel's trial decisions or the findings of the state courts. He has not established that the denial of relief was contrary to, or an unreasonable application of, Strickland. He is not entitled to relief on this claim.

B.      Failure to Object to State's Expert or Hire an Independent Expert

Chenevert argues that counsel was deficient in failing to challenge Dr. Coleridge T. Franklin's qualifications as the State's family medicine expert. He claims that Dr. Franklin admitted that he was not qualified to speak as an expert. He also claims that counsel was deficient in failing to hire a defense expert to testify as to the victim's physical condition.

The transcript of Dr. Franklin's testimony does not disclose that he ever admitted at trial that he "lacked the proper equipment and had not done the proper testing on the victim to qualify him as an expert witness," as suggested by Chenevert.[46]  At the post-conviction hearing, however, defense counsel recalled that Dr. Franklin made that concession to him during an interview.[47]  He also recalled that it was made only in terms of the limited context of a follow-up on the gynecological examination to allow the formulation of an opinion on the victim's condition.[48]

Defense counsel further testified at the hearing, however, that he did not challenge Dr. Franklin's ability to testify, because he was a licensed medical doctor with some expertise.[49]  After listening to his qualifications, it was clear to defense counsel, Yates, that Dr. Franklin would be allowed to testify as an expert, even if he objected. He believed that an objection would have given the jury the perception that he was a "troublemaker" and could have alienated the jury unnecessarily in light of Dr. Franklin's qualifications.  Yates determined that he had no basis to attack Dr. Franklin's credentials to an extent sufficient to persuade the court not to accept Dr. Franklin as an expert.[50]  He

---

[46]Rec. Doc. No. 5-1, p. 8.

[47]St. Rec. Vol. 5 of 9, Hearing Transcript, p. 82, 5/12/10.

[48]Id., p. 85.

[49]Id., p. 83.

[50]Id., pp. 83-84.

also did not find it appropriate to have the jury removed to make an objection, because it would have left the jury questioning what counsel was trying to hide.[51]

Dr. Franklin testified at trial that he was a licensed practicing physician who completed his studies at an accredited medical school in 1980.[52] He also indicated that he had previously testified in the state court as an expert, including testimony as an expert in the field of family medicine.[53] Chenevert's counsel agreed to accept Dr. Franklin as an expert in the field of family medicine, noting that "[w]e have no reasons to challenge his expertise."[54] Dr. Franklin thereafter testified about the several occasions when he examined K.B. privately and for OCS in connection with possible sexual activity and sexual abuse, and he was cross-examined thoroughly by defense counsel.[55]

Chenevert offers nothing to suggest that Dr. Franklin was not qualified to give expert testimony regarding his medical examinations of the victim between 1997 and 2000. It was reasonable for an experienced attorney like Yates, Chenevert's trial counsel, not to challenge a doctor's expertise in the area of medicine in which he practices.

---

[51]Id., p. 84.

[52]St. Rec. Vol. 4 of 9, Trial Transcript, p. 61, 8/19, 20, 21/02.

[53]Id., p. 61.

[54]Id.

[55]Id., pp. 62-75.

In addition, the stipulation to the doctor's expertise was merely an agreement to facts about his training, which the State could and did easily establish. There was no apparent advantage to Chenevert for his counsel to refuse to agree to Dr. Franklin's qualifications. Chenevert has not shown deficient performance or the necessary prejudice to support an ineffective assistance of counsel claim regarding the stipulation. See Berry v. King, 765 F.2d 451, 454-55 (5th Cir. 1985) (a habeas petitioner must show prejudice caused by a stipulation made by his trial counsel).

Chenevert also has not established that his defense was prejudiced by counsel's failure to hire an expert to testify regarding the physical condition of the victim's hymen and possible causes for its condition. Yates testified that he and co-counsel interviewed Dr. Franklin before trial about his examinations of K.B.[56] Based on their discussion, they resolved that no further expert testimony was necessary because Dr. Franklin's testimony was going to be "neutral at best."[57] Yates knew that the doctor "could not testify that the girl had been penetrated by any person or thing at any particular time and certainly not by any particular person."[58] As he understood the doctor's opinion, "he couldn't even say that she had been penetrated."[59] Counsel did not want to risk the chance of getting

---

[56]Id., p. 85.

[57]Id.

[58]Id.

[59]Id.

an expert that might make findings that would be worse for Chenevert, such as a finding that she had been penetrated. Based on the information available to counsel, he found it better to "go with what we had" in Dr. Franklin's neutral testimony.[60]

Yates's strategy is reflected in his cross-examination of Dr. Franklin, during which he elicited testimony about the doctor's inconclusive findings on causation. This cross-examination also demonstrated Yates's knowledge and preparation for the attack on Dr. Franklin's testimony. See Bowers v. Quarterman, 497 F.3d 459, 472 (5th Cir. 2007) (citing Dees v. Caspiri, 904 F.2d 452, 455 (8th Cir. 1990) ("Counsel had a duty to garner the expertise necessary to cross examine [the state's expert].").

It was defense counsel's professional opinion, confirmed at the state court hearing, that Dr. Franklin's circumstantial testimony that could be undermined by cross-examination at trial might be contradicted by another expert to the detriment of Chenevert's defense. This decision was well within his trial strategy discretion not to look for another expert. Dees, 904 F.2d at 454-55. "Unless a crucial and important legal issue rests on the reliability of scientific evidence, . . . counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed and based on a strategic decision." Bower, 497 F.3d at 472. Affording trial

_____

[60]Id., p. 86.

counsel strategic decisions the due deference required by the applicable law, his decision not to hire an expert for this purpose was not constitutionally ineffective.

The state courts' denial of relief on this claim was neither contrary to nor an unreasonable application of <u>Strickland</u>. Chenevert is not entitled to relief on this claim.

## C.    Failure to Object to Earl Stevenson Remaining on Jury

Chenevert alleges that counsel was ineffective for failing to object to Earl Stevenson remaining on the jury after it was discovered that he was related to K.B. through marriage to one of her aunts. Stevenson did not acknowledge any relationship to K.B. during general questioning to the panel during voir dire. Chenevert argues that counsel offered no good reason for his decision to leave Stevenson on the jury and erred in allowing Stevenson to remain on the jury knowing that he concealed information during voir dire. The Due Process Clause guarantees an accused the right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information. <u>Morgan v. Illinois</u>, 504 U.S. 719, 726-27 (1992); <u>Patton v. Yount</u>, 467 U.S. 1025, 1037 n.12 (1984). To prevail on a claim of denial of due process because of a contaminated jury panel, the petitioner must demonstrate prejudice by establishing the actual existence of an opinion that will raise a presumption of partiality in the jurors' minds. <u>Murphy v. Florida</u>, 421 U.S. 794, 800 (1975); <u>Chavez v. Cockrell</u>, 310 F.3d 805, 811 (5th Cir. 2002). Due process also requires

the trial court to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." Remmer v. United States, 347 U.S. 227, 230 (1954)).

A trial judge should normally undertake assessment of prejudicial impact by questioning jurors directly, with the participation and input of counsel. Smith v. Phillips, 455 U.S. 209, 217 (1982). The trial court must assess "whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Soria v. Johnson, 207 F.3d 232, 242 (5th Cir. 2000) (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)). The petitioner must show that "an incompetent juror is forced upon him." Williams v. Cockrell, 46 Fed. Appx. 227, 2002 WL 1940099, *5-*6 (5th Cir. Jul. 25, 2002) (quoting United States v. Webster, 162 F.3d 308, 342 n. 36 (5th Cir. 1999) (internal quotes omitted) (quoting Ross v. Oklahoma, 487 U.S. 81, 89 (1988)).

Whether a jury was impartial "is a question of federal law; whether a juror can in fact do that is a determination to which habeas courts owe special deference." Patton, 467 U.S. at 1036-37 & n.12. Thus, the state trial court's "finding of impartiality is therefore 'presumed correct' unless it is 'not fairly supported' by the record viewed 'as a whole.'" Jones v. Butler, 864 F.2d 348, 362 (5th Cir. 1988) (quoting 28 U.S.C. § 2254(d)(8)). Additionally, the United States Supreme Court has made clear that "deference must be paid to the trial judge who sees and hears the juror." Wainwright, 469 U.S. at 426. The habeas petitioner has the burden of rebutting this presumption of

correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Chenevert has not met this burden.

The record does not readily indicate how counsel or the court became aware of Stevenson's familial connection with the victim's family. The record does reflect that, at the close of evidence and before the jury was charged, Yates questioned Stevenson outside of the presence of the other jurors. The following exchange took place:[61]

BY MR. YATES:
Q.    Mr. Stevenson, are you related to [K.B.] or any of her relatives?
A.    Huh.
Q.    Are you related to [K.B.] in any way?
A.    I'm married to her aunt.
Q.    Her aunt?
A.    Yes.
Q.    What's the aunt's name?
A.    Earline.
Q.    Earline?
A.    Yes.
Q.    Is that Elanda's sister?
A.    No, that's Elanda's mother's aunt.
Q.    Okay, Elanda's mother's - - and that would be Sherry - Shirley; what's her name?
A.    Huh.

MR. BARNES:
        Earline.

THE WITNESS:
        Earline.

BY MR. YATES:

_____

[61]St. Rec. Vol. 4 of 9, Trial Transcript, pp. 163-166, 8/19, 20, 21/02.

34

Q. Earline, okay. How close are you to Earline and Elanda?

A. I really don't know all the family, all of them.

Q. You just know them when you see them?

A. Huh.

Q. Do you just know them when you see them?

A. I don't know all her nieces and nephews. I didn't know her.

Q. You say you didn't know her, you talking about [K.B.]?

A. Yes. That's my first time seeing her.

Q. Did you know Elanda?

A. Elanda, yes.

Q. How often you see Elanda?

A. Seldom.

Q. Very seldom?

A. Very seldom.

Q. Are you very close to that side of the family at all?

A. Well, like I say, I seldom see them. I still don't know all the family.

Q. Would that make any difference to you in this case?

A. No.

Q. Do you feel like it would - - if you had to vote to acquit Mr. Chenevert, do you think that would make any difference; your wife get mad at your (sic) or your in-laws or anybody?

A. No.

Q. If they did get mad at you would you care?

A. No.

Q. Was this your wife that was sitting in the back here?

A. No, my wife is not out there.

Q. Did you know anybody that was a spectator that was watching?

A. Well, I see Elanda's mother out there and her grandmother.

Q. Okay.

A. And her mother.

Q. Anybody else?

A. No, that's all.

Q. Would it affect you in any way? Their being present, has it affected you in any way?

A. No.

Q. You would still make up your mind based on the evidence?

A. Right.

Q. How did you feel about having to sit on this jury knowing this?

A. I feel kind of comfortable.

35

MR. YATES:

    Your Honor, we will turn it over to the Court to make a decision on it.

MR. BARNES:

    I have no questions.  Thank you, sir.  Thank you for your candor.

THE COURT:

    Thank you.

MR. YATES:

    Thank you, Mr. Stevenson.  You can step down.  Be back at 1:30.

.  .  .

THE COURT:

    Let me see you all[.]

(OFF RECORD BENCH CONFERENCE)

MR. BARNES:

    We need to put that on record.  The Defense has no challenge an[d] that the Court's decision is that he will stay on the jury.  Is that part of the record now?

THE COURT:

    So ordered.

At trial, defense counsel was given the opportunity to question Stevenson thoroughly about his knowledge and relationship with K.B. and her family, and he did so.  At the post-conviction hearing, Yates testified that Stevenson's answers indicated that he was not closely related to the victim.[62]  He also noted that Stevenson was the only

---

[62]St. Rec. Vol. 5 of 9, Hearing Transcript, pp. 89, 91, 5/12/10.

black juror on the jury and that may have been another reason they wanted to leave him on the jury.[63]

In this case, the state trial court allowed defense counsel to make the necessary inquiries which revealed that Stevenson's relationship with the victim's side of the family was, by his concession, distant and remote enough not to influence his role as an unbiased juror. Counsel and the state trial court determined based on his responses that the loose connection would not impact his ability to deliberate fairly. This finding is entitled to deference, and there is nothing in the record to contradict it.

Defense counsel also noted in his post-conviction hearing testimony that he did not believe the familial connection would be prejudicial based on Stevenson's answers. He also supposed that Stevenson's race could have been part of the defense team's decision to leave him on the jury. He was the only black member of the jury, and counsel said he usually liked to have jurors of the same race as his client and the witnesses. Both counsel and the state trial court obviously determined that there was no basis to believe that Stevenson was biased or unable to perform his juror function in an unbiased way.

Defense counsel's actions concerning Stevenson as a juror was not deficient performance and is entitled to the deference afforded reasonable professional conduct. Chenevert also has made no showing of prejudice or that Stevenson had an opinion or

---

[63]Id., p. 95.

mind-set of partiality. For these reasons, the state courts' denial of relief on this claim was not contrary to or an unreasonable application of federal law. Chenevert is not entitled to relief on this claim.

D.    Failure to Impeach Robert Brisco

Chenevert claims that counsel was deficient in failing to impeach OCS Investigator Robert Brisco based on his reliance on hearsay testimony. Chenevert argues that Brisco testified that K.B. was uncomfortable talking to him, so he called in a co-worker, Agnes Morgan, who interviewed the victim and shared the results with Brisco.

Chenevert concedes that his counsel's cross-examination tended to show that Brisco's report was based on information outside of his personal knowledge and was hearsay. Chenevert, however, challenges counsel's failure to establish for the jury that the hearsay information attributed to Ms. Morgan could not be relied upon by the jury as fact. He claims that counsel's failure to make this clear to the jury was prejudicial. He also suggests that counsel should have impeached Brisco by showing that Brisco told the Houma police that the victim told him about the sexual abuse incidents and that Chenevert showed her dirty movies. He argues that the victim denied speaking with Brisco and denied that Chenevert showed her dirty movies. He claims that counsel should have used this to impeach Brisco and uncover possible perjured testimony.

At the post-conviction hearing, defense counsel Yates had no independent recollection of his preparation for or the cross-examination of Brisco.

At trial, the record reflects that Brisco was called by the State to clarify the report from and testimony of Lieutenant Wolfe of the Houma Police Department, which indicated that K.B. told Brisco that Chenevert made her watch dirty movies.[64]  Brisco testified that he did interview K.B. during the investigation.[65]  He also denied that K.B. told him or anyone else that Chenevert showed her dirty movies.[66]  He stated that, if that were in the Houma police report, that was not accurate.[67]  In confirming the record, Brisco referred to his OCS records, which indicated that K.B. told Agnes Morgan that Chenevert "tried" to make her watch "nasty movies," but to his knowledge that was not linked to the sex crimes at issue.[68]

On cross-examination, Brisco indicated that, during his interview, K.B. would not talk to him.[69]  He indicated that information about the sexual acts was given to Morgan.[70]  Yates then began to question Brisco about what K.B. told Morgan, and the prosecutor

---

[64]St. Rec. Vol. 4 of 9, Trial Transcript, p. 110, 8/19, 20, 21/02.

[65]Id.

[66]Id., pp. 110-11.

[67]Id., p. 111.

[68]Id., pp. 111-12.

[69]Id., p. 113.

[70]Id.

successfully objected to the question on grounds of hearsay.[71]  Brisco later testified that

Morgan shared the information about the sexual abuse with him after her interview of

K.B.[72]  His OCS records included a summary of the interview Morgan conducted with

K.B. as part of the case record which he maintained as the case worker.  The State

objected to reliance on the report without Morgan being present.

After some discussion, the State withdrew its objection and defense counsel

questioned Brisco.  Defense counsel asked one question about the contents of the report:

> Q.    There's no indication in there that [K.B.] advised Mrs. Morgan that
>        she was anything other than touched; isn't that correct?
>                                    . . .
> A.    During that statement she did indicate that he only touched her on
>        several occasions.[73]

After a series of questions by defense counsel establishing that Brisco was <u>not</u> in

the same room, or even in the same building, when Morgan interviewed K.B., counsel

also was sure to ask him, "So all you know is what was reported by Mrs. Morgan; is that

correct?"[74]  Brisco replied that it was correct; his information was from Morgan and

"other collaterals" with whom he spoke and he was not present for the interview which

---

[71]<u>Id</u>.

[72]<u>Id</u>., p. 114.

[73]<u>Id</u>., p. 115.

[74]<u>Id</u>., p. 116.

was done outside of the office.[75]  He also indicated that his records did not contain any other complaints of sexual abuse by Chenevert on K.B.'s siblings.

The exchange at trial between counsel and Brisco establishes that defense counsel did nothing that might have lulled the jury into the misapprehension that what was reported by Morgan was "indeed true," as suggested by Chenevert. On the contrary, Brisco's testimony clearly indicates that he was not present for and received no direct information from K.B.  It was advantageous to the defense when he testified that K.B. told Morgan that she had only been touched by Chenevert, a point elicited by defense counsel to counter the accusations of rape and the evidence of penetration.  Defense counsel in no way implied, mislead or conceded to the jury that the report's contents were unquestionably true.  Instead, defense counsel questioned Brisco about the report to obtain enough information to point out an inconsistency in K.B.'s allegations and the evidence.

Chenevert also contends that his counsel was deficient for not confronting Brisco with Lieutenant Wolfe's report.  The record demonstrates that Brisco was questioned about the report by both the prosecutor and defense counsel.[76]  Brisco had already indicated direct examination that Wolfe's report was inaccurate from his perspective. Chenevert has not shown that his counsel was unreasonable in his questioning or in

---

[75]Id.

[76]Id., pp. 110-112.

failing to question Brisco further about the report in light of his testimony on direct examination.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of federal law. Chenevert is not entitled to relief on this claim.

E&F.  Failure to Object to Prosecutorial Misconduct

Chenevert claims that his counsel erroneously failed to object to the prosecution's reference to Yates as appointed counsel and the prosecution's use of endearing terms in referring to the victim to garner sympathy from the jury.

A prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause.  Jones v. Butler, 864 F.2d at 356.  Due process requires reversal of a conviction only when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial.  Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).  "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'  The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the

42

resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (citations and quotations omitted).

In the Fifth Circuit, courts must apply a two-step analysis in reviewing claims of prosecutorial misconduct. United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000); United States v. Lankford, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must determine whether the prosecutor made an improper remark. Wise, 221 F.3d at 152. "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant." Id. A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." Jones v. Butler, 864 F.2d at 356; Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994). Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair," by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." Rogers, 848 F.2d at 609 (footnote and citations omitted).

Chenevert's arguments are wholly conclusory, and he has not established unconstitutional conduct by the prosecutor to which his counsel should have objected. The trial transcript indicates that, at the beginning of his opening argument, the prosecutor made the following statement:

As you might recall, my name is Bud Barnes. I'm the District Attorney that's assigned to prosecute this case. Mr. Yates, who you have also met and sitting at the other table, he's the Defense Attorney who is assigned to defend Mr. Chenevert.

Yates indicated at the post-conviction hearing that he did not find the comment prejudicial so as to require an objection.[77]

The prosecutor used the same phrase, "assigned," in introducing himself and defense counsel. He did not state that Yates was appointed or that Chenevert could not afford an attorney. The reference was neutral, unexaggerated, not specifically emphasized and inconsequential.[78] The prosecutor made no reference to Yates's appointment per se or to his status as a public defender. The prosecutor's introductory statement was not prejudicial and did not call for an objection from Chenevert's counsel. Counsel's decision not to make a meritless objection does not constitute deficient or prejudicial performance. See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)).

---

[77]St. Rec. Vol. 5 of 9, Hearing Transcript, p. 98, 5/12/10.

[78]Id.

The prosecutor's perfunctory statement also differs markedly from the kind of damaging comments addressed in the cases cited by Chenevert in his memorandum in support of the petition. As an initial matter, the cases cited by Chenevert are distinguishable in that they address <u>defense counsel's</u> references to their own appointments for purposes which did not serve the interest of their clients. For instance, in <u>Goodwin v. Balkcom</u>, 684 F.2d 794, (11th Cir. 1982), the court was addressing defense counsel's own references to appointment, along with inappropriate racial and derogatory slurs about the petitioner, during their own opening and closing arguments. No <u>prosecutorial</u> comment was at issue. Similarly, in <u>Thompson v. Haley</u>, 225 F.3d 1292, 1304 (11th Cir. 2001), the court chastised defense counsel's reference to his <u>own</u> appointment to avoid public ridicule for representation of an unpopular defendant. Again, no <u>prosecutorial</u> comment was at issue.[79] These cases are not relevant to the assessment of this case concerning defense counsel's decision not to object to a prosecutor's comments.

Chenevert also challenges counsel's failure to object to the prosecutor's repeated use of the terms "Sweetie" and "Baby" when referring to or addressing K.B. at trial. While defense counsel did not specifically recall these references, he testified at the post-conviction hearing that he must not have found the usage to be "over the line" so as to

---

[79]Chenevert also cites <u>King v. Strickland</u>, 714 F.2d 1481 (11th Cir. 1983), another opinion addressing defense counsel's reference to appointment, which was vacated by the United States Supreme Court. <u>Strickland v. King</u>, 467 U.S. 1211 (1981).

be prejudicial or objectionable. He reiterated his opinion that objecting too much before a jury could alienate the jury because juries perceive excessive objection to be a lawyer's attempt to hide things and could cause them to favor the prosecution.[80] Defense counsel clearly stated that he always objects when he finds something "really prejudicial."[81]

Chenevert has not shown that the prosecutor's comments were so prejudicial that they resulted in a fundamentally unfair trial. During the three days of testimony and argument, the prosecutor used the term "Baby" seven times and "Sweetie" at least twice when referring to or speaking with K.B.[82] In the overall context of the trial as a whole, the record does not demonstrate that his use of these terms garnered any inappropriate sympathy for K.B. rising to the level of prohibited prosecutorial misconduct under the standards discussed above. For legitimate strategic reasons, defense counsel at trial reasonably did not find that the comments warranted objection that would benefit the defense. His judgment in this regard was not deficient or prejudicial performance by counsel and falls within the ambit of sound trial strategy.

The state courts' denial of relief on these claims was not contrary to, or an unreasonable application, of <u>Strickland</u>. Chenevert is not entitled to relief on this claim.

---

[80]<u>Id</u>.

[81]<u>Id</u>.

[82]<u>Id</u>., p. 99.

VII.  INCOMPLETE RECORD ON APPEAL

Chenevert alleges that he is entitled to relief because, before his appeal, he discovered that certain comments from various persons were missing from the transcript or that the transcript had been altered.  He raised this claim for the first time in his application for post-conviction relief in the state courts.  The state trial court denied relief after considering the State's defenses and the post-conviction hearing testimony and evidence.  Chenevert's subsequent writ applications to the Louisiana First Circuit and the Louisiana Supreme Court were denied without reasons.

The United States Supreme Court has held that an indigent defendant is entitled to a free copy of the trial transcript to have a meaningful appeal.  Hardy v. United States, 375 U.S. 277 (1964).  However, the State is not "obligated to automatically supply a complete verbatim transcript," Moore v. Wainwright, 633 F.2d 406, 408 (5th Cir. 1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal."  Draper v. Washington, 372 U.S. 487, 495 (1963).

Louisiana law complies with these constitutional standards.  Appellate review in Louisiana is restricted to questions of law based on defense objections and assignments of error.  State v. Francis, 345 So.2d 1120, 1125 (La.) (citing La. Const. Art. V, § 5(C) (1974) and La. Code Crim. P. art. 841), cert. denied, 434 U.S. 891 (1977).  Thus, when the transcript and record contain the portions necessary to address the issues actually

47

raised on appeal, including those portions where objections were made by counsel, the record is constitutionally sufficient for a meaningful appeal. <u>Schwander v. Blackburn</u>, 750 F.2d 494 (5th Cir. 1985).

In this case, the only substantive issue raised by Chenevert on appeal was insufficiency of the evidence to support conviction as to both cases. The transcripts presented to this court contain the testimony from the case-in-chief, the voir dire examination and other pretrial and post-conviction hearings.[83]

At the post-conviction hearing, Chenevert's appointed appellate counsel, Bertha Hillman, testified that she prepared the appeal based on the actual record submitted to the appellate court.[84] She stated that she usually received courtesy copies of the transcripts from the court reporter, which she would have forwarded to Chenevert.[85] Hillman recalled that Chenevert notified her that he believed the trial transcript he received from her was incomplete or inaccurate.[86] She responded to him and advised him that the transcripts she received are not always complete, which is why she uses the appellate

---

[83]The trial and voir dire transcripts occasionally indicate that portions of the proceedings were lost or inadvertently taped-over.

[84]St. Rec. Vol. 5 of 9, Hearing Transcript, p. 38, 5/12/10.

[85]<u>Id</u>., pp. 37-38.

[86]<u>Id</u>.

court record. She also advised him that ineffective assistance of counsel claims would be more appropriately raised on post-conviction review.[87]

Chenevert does not now claim, nor has he ever established, that the record was missing portions that were relevant to resolution of his direct appeals or that indicated he received an unconstitutionally unfair trial. He instead argues simply that the transcript is incomplete and that alone is unconstitutional. That is not the test under federal habeas law.

It is well settled that the State is not "required to furnish complete transcripts so that the defendants . . . may conduct 'fishing expeditions' to seek out possible errors at trial." Jackson v. Estelle, 672 F.2d 505, 506 (5th Cir. 1982). The law also does not require a more complete transcript when the petitioner is completely unable "to indicate one specific error committed during the portions of trial not included in the record." United States v. Renton, 700 F.2d 154, 159 (5th Cir. 1983).

The alleged missing statements, detailed in Chenevert's memorandum in support,[88] do not point to any significant trial error or constitutional violation which would have altered the outcome of his direct appeal or his state post-conviction application. I also note that only Chenevert has stated that these statements were missing from the transcript and that no other person recalls that any of these statements were made at trial.

---

[87]Id., pp. 38-39.

[88]Rec. Doc. No. 5-1, pp. 18-19.

49

The court reporter, Linda Trahan, testified at the post-conviction hearing that she was required to preserve on tape every comment made before the jury.[89] She also used short-hand notes, which for this trial had been lost in a move. During the post-conviction proceedings, as instructed by the court, she listened to the tapes and compared them to the transcript and found that nothing Chenevert claimed was missing was on the original tapes.[90] At the hearing, the prosecutor went through each statement Chenevert claimed to be missing.[91] Trahan confirmed that none of the statements were on the tape.[92] When the prosecutor and the court requested that the tapes be copied for defense counsel's review in preparation for the post-conviction proceedings, the crime lab inadvertently taped over some of the original tapes leaving them blank.[93]

Chenevert's defense counsel, William Yates, conceded at the hearing that as a trial attorney, he would not have reviewed the trial transcript; the appellate attorney would have been charged with that task.[94] He did not recall, however, from trial any of the

---

[89] Id., p. 42.

[90] Id., pp. 51, 52-55.

[91] Id., pp. 52-55.

[92] Id.

[93] Id., pp. 46-47.

[94] Id., p. 97.

outbursts Chenevert attributed to the trial judge which were not in the transcript.[95]  He also did not recall making the statement, "I object.  I'm not being tried today, he is," which Chenevert said Yates made but which was not in the transcript.[96]  Yates denied that would be the type of language he would have used.[97]

Chenevert's self-serving argument about missing statements is not supported by anything in the record.  He also does not establish that the record and transcripts in his case were other than sufficient for the state courts to review his appellate and post-conviction grounds for relief.  There is nothing in the record to indicate that he was denied the right to a thorough appeal or in any way prevented from raising a legitimate error for review.  To warrant federal habeas corpus relief on a claim that state court transcripts are unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated, transparent speculation.  See Mullen v. Blackburn, 808 F.2d 1143, 1146 (5th Cir.1987); United States ex. rel. Hunter v. Follette, 307 F. Supp. 1023, 1025 (S.D.N.Y.) ("general assertion that omitted portions of the record 'contained most of the . . . trial errors which are reversible,' presents no ground for federal habeas corpus."), aff'd, 420 F.2d 779 (2d Cir.1969), cert. denied, 397 U.S. 1067 (1970). Chenevert has not met this burden.

---

[95]Id., pp. 96-97.

[96]Id., p. 102.

[97]Id.

For the foregoing reasons, the denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Chenevert is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Ernest Chenevert's motions to stay (Rec. Doc. Nos. 11, 12) be **DENIED**.

It is further **RECOMMENDED** that Chenevert's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[98]

New Orleans, Louisiana, this ___22nd___ day of August, 2012.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[98]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.